UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 16-CV-24628

SUSAN MILLER,

       Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES LTD. and
RDVT SAR d/b/a RENDEZVOUS TOUR
COMPANY,

       Defendants.

_____/

## **COMPLAINT**

COMES NOW the Plaintiff, SUSAN MILLER, by and through her undersigned attorney, and sues the Defendants, ROYAL CARIBBEAN CRUISES, LTD., (hereinafter referred to as RCCL) and RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY (hereinafter referred to as RENDEZVOUS), and alleges as follows:

     1.     This is an action which arises out of the General Maritime Law and this Court has jurisdiction pursuant to 28 USC 1333.

     2.     The Plaintiff, SUSAN MILLER, is domiciled in Florida and is a resident of Homosassa, Florida.

     3.     That at all times material hereto, the Defendant, RCCL, was a foreign corporation with its principal place of business in Miami, Florida.

4.      That at all times material hereto, RCCL's agent and joint venture Defendant, RENDEZVOUS, was a foreign corporation which, upon information and belief, was doing business in St. Maarten.

5.      That at all times material hereto, the Defendant, RCCL, is subject to the jurisdiction of this Court by virtue of having personally or through an agent:

    (a)     Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    (b)     Was engaged in substantial activity within this state;

    (c)     Committed one or more of the acts stated in Florida Statutes sections 48.081, 48.181 and/or 48.193.

6.      That at all times material hereto, the Defendant, RENDEZVOUS, is subject to the jurisdiction of this Court by virtue of having personally or through an agent:

    (a)     Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    (b)     Was engaged in substantial activity within this state;

    (c)     Committed one or more of the acts stated in Florida Statutes sections 48.081, 48.181 and/or 48.193.

7.      That this is an action for damages which are in excess of Seventy-Five Thousand ($75,000.00) Dollars.

8.      That at all times material hereto, the Defendant, RCCL, was the owner/operator of the cruise vessel FREEDOM OF THE SEAS.

9.      That on or about November 5, 2015, the Plaintiff was a passenger on said cruise vessel and the ship was docked in St. Maarten.

10. Accordingly, Plaintiff was an invitee while on those premises and/or while on excursions provided, organized, promoted, advertised, and vouched for to cruise passengers of RCCL and operated by the joint venturer and agent of RCCL, RENDEZVOUS.

11. **RCCL'S EXCURSION PARTNER AND AGENT, DEFENDANT, RENDEZVOUS**: This action for negligence arose from an excursion that was provided, organized, promoted, advertised, and vouched for by RCCL and operated by the joint venturer and agent of RCCL, RENDEZVOUS, for the cruise passengers of RCCL. RENDEZVOUS operates several different excursion tours for RCCL and its passengers, including the subject zip-line tour on the island of St. Maarten that caused the injuries to the Plaintiff on November 5, 2015 described herein. RCCL and RENDEZVOUS have had an on-going business relationship for approximately 12 years.

12. Before this incident, RCCL promoted, sold, vouched for, and recommended a RENDEZVOUS Zip-line excursion ride to the Plaintiff. The cruise excursion on which the incident occurred was part and parcel of the cruise and the cruise experience, and the ship at all times material hereto was in navigable waters. Accordingly, the General Maritime Law applies to this case.

13. RCCL and RENDEZVOUS were engaged in a joint venture and RENDEZVOUS served as RCCL's actual and apparent agent. The joint venture and agency relationships are clearly shown by documents which define the relationship including but not limited to the Tour Operator Agreement, a sample copy of which is attached hereto as **Exhibit A.**, the Tour Operations Manual, a sample copy of which is attached as **Exhibit B,** and Tour Proposal Template, a copy of which is attached hereto as **Exhibit C**. The joint venture-proving documents also include the agreement which defines the sharing of revenue which RCCL has copies of but Plaintiff does not. These

documents demonstrate significant control by RCCL over the operations and activities of RENDEZVOUS which supports the conclusion that RENDEZVOUS is a joint venture or agent of RCCL despite RCCL's legally non-binding-as-to-third parties pronouncement in its sample Tour Operator Agreement that RENDEZVOUS is an independent contractor. (See, **Exhibit A**: Tour Operator Agreement, Section 9). *See, e.g., Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1238 (11th Cir. 2014) ("Finally, even if we were to look at the contract at this [motion to dismiss] stage, we would not consider the nurse and doctor to be independent contractors simply because that is what the cruise line calls them.")  The Tour Operator Agreement, Tour Operations Manual, and the communications and course of conduct between RCCL and RENDEZVOUS establish that they intended to enter a joint venture, partnership, and/or agency relationship.

14.     **INTENT TO ENTER INTO JOINT VENTURE:** The intent of RCCL and RENDEZVOUS is clearly shown by the documents. RCCL controls several aspects of RENDEZVOUS' operations and what it offers. And RCCL and RENDEZVOUS then share in the revenues of the venture.

15.     Also, RCCL asks RENDEZVOUS for its tour schedule and availability for advanced timeframes. (**Exhibit B**, Tour Operations Manual, Allotments). Thus, RCCL and RENDEZVOUS operate not based upon discrete, individual contracts, but based on their years-long relationship  and common purpose to provide a tour operation for RCCL's passengers in St. Maarten.

16.     **COMMON PURPOSE:** RCCL and RENDEZVOUS entered into an agreement to provide RCCL's passengers with a shore excursion—in this case a Zip-line ride. RCCL promotes, collects payment for, issues tickets, and brings its passengers to St. Maarten.  RENDEZVOUS operates the various shore excursion tours, including the zip-lining excursion purchased by the

Plaintiff. RCCL receives a substantial amount of income from the sale of these excursions and in fact splits a percentage of the excursion revenue with RENDEZVOUS.  RCCL receives the greater percentage by far.  Although each entity carries out its own duties under the arrangement, there is a community of interest in the performance of a common purpose—to profit from the operation of the RENDEZVOUS Zip-line ride from payments made by  RCCL's passengers directly to RCCL.

17.      **JOINT CONTROL/RIGHT OF CONTROL:** RCCL controls the overall design of the excursion, only RCCL can change the description of the excursion, and then RCCL has the right to inspect and to correct the excursion. One example of RCCL'S control over the design and operations of the overall excursion itself is the fact that RCCL must approve the description of the excursion, can change that description at will, and can correct the excursion operator if the excursion deviates from the plan description. This process of describing the excursion starts with the request for proposal (RFP) which is described in the Operations Manual, Exhibit B hereto. In that Operations Manual, RCCL makes clear that RCCL'S "review process is extensive and incorporates all relevant details, such as quality and content of tours being proposed, price, past service history, past safety history, compliance with local licensing and operating regulations, available transportation equipment, historical participation levels, insurance levels, "fit" with tour program and overall goals". (Operating Manual, Exhibit B hereto, p. 6). The Tour Operator Agreement, Exhibit A hereto, provides in Exhibit A to that Agreement that the excursion operator is required to also provide a description of the tour (excursion) "in the annual operating plan prepared by the Operator and agreed to by the Cruise Line". (Emphasis added)(Operator Agreement, Exhibit A hereto, Exhibit A under "Description of Tours"). The Agreement also provides that "The tours may not be materially modified without the prior written consent of the Cruise Line". )(Operator Agreement, Exhibit A hereto, Exhibit A under "Description of Tours").

Finally, the form for the Annual Operator Agreement, Exhibit C hereto, on the last page under Sec. 7 "Tour Descriptions" provides that "If chosen, we [RCCL] reserve the right to modify tour descriptions to meet our brand standards". Therefore, RCCL has the right to change the description of the tour itself but the operator does not. And it is the description on the Annual Operating Plan which allows RCCL to control the excursion itself because RCCL has to right to inspect and to "correct" the operations if the tour does not conform to these descriptions. The Operations Manual, Exhibit B hereto, provides that "**In addition, on occasion, shipboard or shoreside staff will participate on tours to evaluate the tour program based on the operational details and tour description provided by the tour operator. Discrepancies and irregularities will be reported to the Miami office and the local tour operator for review, follow up and correction, as appropriate**." (Emphasis added)(Operations Manual, Exhibit B hereto, P. 13 under "Ratings/Guest Feedback").

18.    RCCL requires that RENDEZVOUS' excursions satisfy the highest safety standards in the industry. (**Exhibit A**, Tour Operator Agreement, Section 1). RCCL retains the **sole discretion** to determine whether dissatisfied passengers will receive a full or partial reimbursement of the cost of their shore excursion tickets. (**Exhibit A**, Tour Operator Agreement, Section 1, ¶ 2). RCCL also controls the financial allocation of the loss and method of ticket reimbursements to dissatisfied passengers by deducting from amounts otherwise owed to RENDEZVOUS (**Exhibit A**, Tour Operator Agreement, Section 1, ¶ 2).

19.    RCCL sets fixed prices and retains **sole discretion** to determine the price it charges passengers for RENDEZVOUS' excursions. RCCL retains the exclusive right to collect the payment. (**Exhibit A**, Tour Operator Agreement, Section 3, ¶ 1, 2).

20.     RCCL reserves a right to terminate its Agreement with RENDEZVOUS "for convenience" upon thirty (30) days written notice. This right of termination without cause is exclusively retained by RCCL. RENDEZVOUS may only terminate the agreement upon RCCL's failure to perform or breach of a material term or condition of the agreement. (Section 5, Tour Operator Agreement).

21.     RCCL retains **sole discretion** to disapprove of RENDEZVOUS' use of RCCL's name, logos, trademarks in advertising, promotion, marketing, or publicity. (Section 12, Tour Operator Agreement).

22.     RCCL controls the booking of tours with its passengers, which is ordinarily accomplished exclusively through RCCL. The Tour Operator Agreement states: "It is anticipated that all tours under this Agreement shall be arranged, booked, and facilitated solely through Cruise Line on its passengers' behalf with the Operator." (Exhibit A, Tour Operator Agreement, Section 6, ¶ 2). If RCCL's passengers book independently through RENDEZVOUS, RCCL retains control over these funds by requiring RENDEZVOUS to pay a protected commission to RCCL. (**Exhibit A**, Tour Operator Agreement Section 6, ¶ 2).

23.     RCCL specifies the exact type and coverage amount of insurance that RENDEZVOUS must maintain at all times and requires RENDEZVOUS' sub-contractors to obtain equivalent insurance. (**Exhibit A**, Tour Operator Agreement, *Exhibit C* to Tour Operator Agreement).

24.     RCCL controls RENDEZVOUS' right to assert any lien or encumbrance against RCCL and restricts RENDEZVOUS' right to assign its interests or delegate its duties. (Exhibit A, Tour Operator Agreement, Sections 8, 12.3). However, "Cruise Line may transfer or assign all or

any part of its interest in this Agreement without the consent of Operator." (**Exhibit A**, Tour Operator Agreement, Section 12.3, ¶ 4).

25.     RCCL requires tour operator staff to board its vessels at least one time per week. RCCL requires these staff members to obtain a vendor ID badge before they will be permitted to board. (Exhibit B, Tour Operations Manual, Security Badges, pg. 8).

26.     RCCL conducts site visits at its discretion via its public health and safety team to inspect food and transportation provided to RCCL's passengers on the shore excursions. (**Exhibit B**, Tour Operations Manual, Section: Safety and Health Recommendations).

27.     RCCL ensures control over the tour experience. RCCL states that "shipboard and shoreside staff will participate on tours to evaluate the tour program based on the operational details and tour descriptions provided by the tour operator. Discrepancies and irregularities will be reported to the Miami office and the local tour operator for review, follow up and corrective action, as appropriate." (**Exhibit B**, Tour Operations Manual, Ratings/Guest Feedback, ¶ 3, pg. 13).

28.     RCCL exerts significant control over tour descriptions and operational details. RCCL states that "tours may not be materially modified without the prior written consent of the Cruise Line." (**Exhibit A**, Tour Operator Agreement, *Exhibit A* to the Operator Agreement). Exhibit A of the Tour Operator Agreement goes on to state that descriptions which RCCL uses to market the tours "need not receive the prior approval of the Operator…" (**Exhibit A**, Tour Operator Agreement, *Exhibit A* to the Operator Agreement).

29.     **JOINT PROPRIETARY INTEREST:** RCCL and RENDEZVOUS have significant joint interests in the ultimate subject matter of their contract: providing a shore excursion experience for RCCL's passengers. RCCL and RENDEZVOUS share resources to accomplish most of the essential elements of their business venture. For instance, RCCL and

RENDEZVOUS use a unified booking and ticketing scheme. RCCL and RENDEZVOUS, in fact, specify in their Tour Operator Agreement that the tours are to be "solely facilitated" through RCCL. (**Exhibit A**, Tour Operator Agreement, Section 6, ¶ 2). RCCL and RENDEZVOUS share a single customer reimbursement policy; they agree on the amount of insurance coverage necessary; they rely on a single system of collecting payment from RCCL passengers; and employ a single, unified strategy of marketing and advertising. (**Exhibit A**, Tour Operator Agreement, Section 1, Section 3, Section 6, *Exhibit A*).

30.     RCCL shares proprietary documents with RENDEZVOUS. As one example, RCCL provides RENDEZVOUS with its Tour Operator Agreement and Tour Operations Manuals, which are confidential and proprietary in their own right. RCCL describes its "customers, customer lists and all relative information as proprietary and confidential." (**Exhibit A**, Tour Operator Agreement, Section 12.4(6)). This is proprietary information which RCCL divulges to RENDEZVOUS on a regular and ongoing basis.

31.     **SHARING OF PROFITS AND LOSSES:** RCCL and RENDEZVOUS split the revenue from the sale of excursion tickets to cruise passengers. (The exact percentage is in documents within the possession of RCCL). Each entity profits as sales increase and suffer loss as sales decrease.

32.     Each entity will suffer its proportionate share of the losses when participation declines.

33.     **APPARENT AGENCY/AGENCY BY ESTOPPEL:** At all times material hereto, RCCL was the apparent principal of RENDEZVOUS who was the apparent agent of RCCL.

34.     RCCL held out RENDEZVOUS —the owner and/or operator of the Zip-line ride in St. Maarten—as its agent. Defendant RCCL represented to its cruise passengers, including but not limited to the Plaintiff that the Zip-line operator was acting for the benefit of RCCL. These representations included the fact that:

(a)     From the moment that the Plaintiff purchased her cruise tickets (and even before), they were bombarded by a series of internet, brochure, and other media, all of which advertised the availability and safety of various RCCL excursions. These excursions were marketed with the personal pronoun "our" by RCCL, and were distinguished from other, allegedly less safe, excursions which were not RCCL excursions.

(b)     RCCL stated on its website "your excursions are planned by insured **partners** who adhere to the highest safety standards in the industry."

(c)     The RCCL shore excursion brochure was given to each passenger onboard the vessel; the shore excursions were sold exclusively through the shore excursion desk located on the RCCL vessel and manned by RCCL employees.

(d)     RENDEZVOUS was not identified as the owner/operator any time when the excursions were being marketed by RCCL and purchased by its passengers, including the Plaintiff.

(e)     The excursions were paid for by charging them to the passengers' RCCL account.

35.     As a result of these numerous and pervasive representations, the Plaintiff had a reasonable belief that the Zip-line operator, RENDEZVOUS, had the authority to act for the benefit of RCCL. The Plaintiff reasonably acted and relied upon such beliefs in purchasing tickets

for the Zip-line shore excursion, and did so to her detriment, suffering severe and debilitating injuries.

36.    **ACTUAL AGENCY:** This is an action based on the agency relationship between RCCL and RENDEZVOUS in which RENDEZVOUS acted and acts as the actual agent of RCCL in the maintenance, operation, and safety of the RENDEZVOUS Zip-line ride which is used by RCCL's passengers on a frequent basis.

37.    RCCL acted as RENDEZVOUS' principal. RCCL acknowledged that RENDEZVOUS would act on its behalf and provide a shore excursion to RCCL's passengers. RCCL's acknowledgement of RENDEZVOUS as its agent came through its advertisements and representations to RCCL passengers—that RENDEZVOUS was a "partner" of RCCL and would operate the RENDEZVOUS Zip-line ride for RCCL's passengers meeting high industry standards. Second, RENDEZVOUS consented, accepted that relationship, and provided the subject Zip-line tour to RCCL's passengers. Third, RCCL maintained and exercised control over the activities of RENDEZVOUS, and specifically, over the actions and conduct which took place at the RENDEZVOUS Zip-line ride. The control was evidenced by the fact that RCCL had an ongoing business relationship with RENDEZVOUS whereby RCCL would exclusively book and supply RENDEZVOUS with RCCL passengers on a regular basis. RCCL also controlled methods of receiving and distributing payments and refunds. RCCL exclusively retained control over insurance coverage requirements, tour descriptions, marketing, food and transportation safety issues, and RENDEZVOUS' right to assign or delegate its duties. Also, given the nature of the relationship between principal and agent, RCCL had the ability to require RENDEZVOUS to provide a reasonably safe Zip-Line ride, and other aspects of safety for its passengers.

38.     The actual agency is evidenced both verbally and through actions and conduct. The ongoing business relationship between RCCL and RENDEZVOUS is significant. The nature of their relationship is such that RCCL regularly makes demands upon RENDEZVOUS for cost reduction in the operation of the shore excursions. RCCL makes scheduling requests of RENDEZVOUS far in advance of the actual tour season. RENDEZVOUS complies with these requests.  RCCL openly acknowledges to the public through its website, a website equally open to RENDEZVOUS, that RCCL uses RENDEZVOUS as its partner. RCCL and RENDEZVOUS exchange communications in the regular course of business where each entity acts like employer and employee and RCCL does not object.

39.     RCCL and RENDEZVOUS have a longstanding relationship. This relationship includes regular communication and cooperation between RENDEZVOUS and RCCL. RCCL conducts inspections and site visits of RENDEZVOUS' operations as part of their on-going relationship. By and through RCCL's longstanding relationship with RENDEZVOUS, including its site inspections or visits, RCCL knew or should have known that RENDEZVOUS' operations failed to meet the high industry safety standards which RCCL promotes to its passengers. RCCL, by its pre-existing relationship with RENDEZVOUS and through its site visits, knew or should have known that RENDEZVOUS operated a dangerous and unsafe zip-line tour.

40.     On November 5, 2015, the Plaintiff participated in the aforementioned Zip-line excursion. RENDEZVOUS, the entity who operated the zip-line ride as RCCL's partner and agent, failed to meet several industry standards as promised by RCCL and breached its reasonable duty of care owed to the Plaintiff. RENDEZVOUS' failures included but were not necessarily limited to improperly instructing the Plaintiff not to brake, failing to provide adequate padding on the zip-line landing platforms, failing to properly instruct the Plaintiff about braking, and using unqualified

and improperly trained staff who abandoned the platform prior to her arrival.  These breaches by RENDEZVOUS caused the Plaintiff to pick up excessive speed heading into the subsequent landing platform. RENDEZVOUS' failures were the actual and proximate cause of the incident and injuries suffered by the Plaintiff. RENDEZVOUS' negligence caused the Plaintiff to slam into the receiving platform without the necessary braking capability, necessary monitoring of the RENDEZVOUS staff, or proper padding and cushioning to meet industry safety standards, which resulted in the Plaintiff suffering a displaced comminuted fracture of her left femur.

41.     That the Plaintiff had pre-purchased online from the Defendant, RCCL, a shore excursion, which included zip-lining at Loterie Farm in St. Maarten.  That at all times material hereto, the Defendant, RENDEZVOUS, owned and/or operated the subject shore excursion pursuant to a Tour Operator Agreement with the Defendant, RCCL.  The excursion was offered, arranged for, sponsored, recommended, marketed, promoted, sold, co-operated and/or managed by RCCL.

42.     The terms of the Tour Operator Agreement require the Defendant to indemnify RCCL for the claims made in this Complaint and further require the Defendant, RENDEZVOUS, to consent to personal jurisdiction in this Court, such that RENDEZVOUS reasonably anticipated that it would be sued here.

43.     That the Defendant, RENDEZVOUS is subject to the jurisdiction of this Court because it sells shore excursion tickets in Miami, Florida directly or through the RCCL website, which is administered in Florida.

44.     That while participating in the zip-lining excursion, the Plaintiff, SUSAN MILLER, sustained serious injuries set forth below in more detail.

## COUNT I
## NEGLIGENCE OF RENDEZVOUS

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through forty-five (45) as though fully set forth herein, and further alleges as follows:

45.     That at all times material hereto, RENDEZVOUS owed a duty to exercise reasonable care for the safety of its RCCL cruise passenger tour participants, including the duty to warn its participants of dangers about which it has actual or constructive knowledge, when it is foreseeable that the participants will be exposed to said dangers.

46.     That RENDEZVOUS breached its duty of care to the Plaintiff and was negligent in one or more of the following manner:

(a)   A RENDEZVOUS instructor instructed the Plaintiff, because she does not weigh much, **not** to use her brake as she approached the platform.

(b)   The instructor told Plaintiff, instead, to tuck up into a ball as tight as possible and not apply brakes.

(c)    RENDEZVOUS failed to have an employee present on the landing platform to catch or receive the Plaintiff after instructing her at the top of the run not to apply her brakes.

(d)   RENDEZVOUS failed to have proper padding and cushioning to meet industry safety standards.

(e)   As a proximate result of (a), (b), (c) and (d) the Plaintiff sustained a displaced comminuted fracture of her left distal femur.

47.     As a direct and proximate result of the negligence of the RENDEZVOUS, as heretofore described, the Plaintiff, SUSAN MILLER, suffered a fractured femur, resulting pain and suffering, aggravation of a pre-existing condition, physical and mental, scarring and disfigurement, is obligated to pay and continue to pay medical bills for treatment of said injuries,

lost income and his earning capacity was impaired, lost the capacity for the enjoyment of life.  The losses are permanent and continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, the Plaintiff demands Judgment against RENDEZVOUS, for all non-economic damages suffered in the past and in the future as a result of the bodily and personal injuries suffered by the Plaintiff including but not limited to bodily injury, pain, suffering, mental anguish, loss of capacity for the enjoyment of life, physical impairment and disability, inconvenience, scarring and disfigurement; and economic damages suffered in the past and in the future on a permanent basis by the Plaintiff including but not limited to past and future medical expenses, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

<u>**COUNT II**</u>
<u>**RCCL'S VICARIOUS LIABILITY FOR**</u>
<u>**THE NEGLIGENCE OF RENDEZVOUS**</u>

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through forty-five (45) as though fully set forth herein, and further alleges as follows:

48.      This is an action against RCCL based on its vicarious liability for the negligence of its joint venture partner, actual agent, and/or apparent agent RENDEZVOUS.

49.      RENDEZVOUS owed the Plaintiff a duty of reasonable care under the circumstances in the operation of the subject Zip-line excursion tour. The circumstances which define the duties are that the Zip-line tour involved the risk of physical injury if not performed with skill and care, the cruise line represented to its passengers that its excursion operators including this one were "insured

partners" who would adhere to the highest safety standards in the industry, RENDEZVOUS provided its tour to RCCL's passengers who were people of different physical and athletic abilities, and RENDEZVOUS knows or should know of the danger and risks of the zip line course and the user or cruise passenger using the course does not know of the dangers and risks of the course or the adequacy or inadequacy of the equipment used on the course.

50.    RENDEZVOUS breached its duty of reasonable care under the circumstances and was negligent by violating industry standards and not providing a reasonably safe Zip-line ride. RENDEZVOUS failed to provide correct instruction to the Plaintiff so that she would utilize the braking system, failed to provide a sufficiently padded landing area at which the incident occurred, failed to provide personnel on the landing platform, and failed to warn RCCL's passengers of these conditions which RENDEZVOUS knew or certainly should have known. These failures constituted violations of industry safety standards, the standards of the Association for Challenge Course Technology (ACCT). The ACCT is comprised of more than 3,000 members worldwide (including the United States, Europe, Asia and the Caribbean and Central America). It establishes and promotes the standard of care for challenge courses such as zip-line courses. RENDEZVOUS violated the following ACCT standards:

    a. **H.1. Brake System**: All zip lines shall be designed and installed with an integrated brake system.

    b. **H.1.1.1 The Brake System shall**:
- Limit the deceleration of the participant so as to prevent a hazard
- Perform its function without permanent deformation or failure of any associated components or equipment
- Arrest the motion of the participant regardless of participant orientation
- Not inhibit the participant retrieval procedure in the event that arrest occurs before the *zip line landing* area is reached.

    c. **H.1.3 Emergency Brake Requirements**: An emergency brake shall require no action by the participant and shall either be completely separate from the primary brake or an integrated backup feature of the primary brake. An

emergency brake  shall be required if, upon failure of the primary brake, both of the following may  occur:

- The participant arrives at the zip line landing area at a speed in excess of 6 mph (10 kph)

- The  participant  experiences  unintended  and/or  harmful  contact  with terrain, objects or people in the zip line landing area.

d. **H.2 Zip Line Landing Areas shall**:
  - Provide  sufficient  space  for  brake  system  operation  and  dismount procedures
  - Provide protection from or limit unintended contact with zip lines, people and other components
  - Be free from hazards that require participant action to avoid. Objects in the zip line landing area that have the potential to harm participants shall be covered with shock absorbing material.

e. **C.1. Core Competencies** are fundamental to operations and possessed by each staff member.

f. **C.1.3.** The  organization's  staff  shall  remain  current  in challenge  course  and canopy/zip line tour industry practices and standards.

g. **C.1.4.** The organization's staff shall have a knowledge level of venue and specific activities appropriate to their job duties.

h. **C.2.1.11.** The  organization's  staff  shall  have  knowledge  of  the  Association  for Challenge Course Technology standards and their use.

i. **C.2.1.12.** The  organization's  staff  shall  communicate  to  participants  necessary safety information prior to the use of any activity or element.

j. **C.2.3.10.** The  organization's  staff  shall  instruct  and  reasonably  manage  relevant canopy/zip line procedures and techniques which may include and are not limited to:

- Take-off
- Body positioning
- Body orientation and control
- Speed control
- Signals and commands
- Braking
- Landing and dismount
- Retrieval protocol

- Hand placement
- Contingency response procedures

   k. **C.2.3.12.** The organization's staff shall understand, instruct and reasonably manage canopy tour/zip line participant take off, travel, and dismount.

   l. **C.3.4.1.** The organization's staff shall communicate relevant program information to participants, including: the nature of the program as voluntary, an explanation of the course activities and/or elements; inherent risks; behavioral norms or expectations; and specific program objectives

   m. **B.1. Training Delivery Requisites**
- **B.1.1. Scope**: Training shall include the specific skills required to operate a course including and not limited to: operations management, core, technical and facilitation competencies.

51.    The RENDEZVOUS Zip-line ride failed to provide a safe landing platform due to inadequate padding and no personnel present to receive the Plaintiff.

52.    The RENDEZVOUS Zip-line instructed Plaintiff to not use the braking system.

53.    The RENDEZVOUS Zip-line ride did not provide an emergency braking system.

54.    The RENDEZVOUS Zip-line ride failed to employ staff members who were trained in accordance with ACCT standards.

55.    The RENDEZVOUS Zip-line ride failed to employ staff members who operated the Zip-line ride in accordance with ACCT standards.

56.    The RENDEZVOUS Zip-line ride in St. Maarten failed to instruct and train the riders, in this case the Plaintiff, in the proper operation and technique in safety and operation of the zip line including but not limited to slowing, braking, and landing.

57.    RCCL allowed RENDEZVOUS to continue the operation of its Zip-line ride in spite of the fact that it knew or should have known about the violations of the industry standards and RENDEZVOUS' other failures mentioned above.

58.    As a result of RENDEZVOUS' negligence, the Plaintiff took part in an unsafe Zip-line ride.  Pursuant to negligent instruction by RENDEZVOUS, she picked up excessive speed and

was unable to break. Due to RENDEZVOUS' failures and violations of industry standards, the Plaintiff could not slow down for the landing platform and struck the tree on the platform at a high rate of speed. The landing platform available to her did not feature sufficient padding to prevent or reduce injury. There was no attendant waiting to catch the Plaintiff. As a result, the Plaintiff suffered a comminuted fracture of her left femur. These injuries are severe and debilitating and could have been prevented but for the breach of RENDEZVOUS' duty to warn of the aforementioned dangers and/or verify on an on-going basis that the RENDEZVOUS Zip-line adhered to industry standards.

59.     As a result of RENDEZVOUS' negligence, which RCCL bears responsibility for as RENDEZVOUS' principal and joint venture partner, the Plaintiff, has suffered permanent economic damages in the past and in the future on a permanent basis including but not limited to medical expenses for medical care and treatment, household expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages including bodily injury, pain, suffering, mental anguish, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement, loss of income in the past, loss of the capacity to earn income in the future, and medical and household and other expenses. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against RCCL, for all non-economic damages suffered in the past and in the future as a result of the bodily and personal injuries suffered by the Plaintiff including but not limited to bodily injury, pain, suffering, mental anguish, loss of capacity for the enjoyment of life, physical impairment and disability, inconvenience, scarring and disfigurement; and economic damages suffered in the past and in the future on a permanent basis

by the Plaintiff including but not limited to past and future medical expenses, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

**COUNT III**
**RCCL – DIRECT NEGLIGENCE – (FAILURE TO WARN)**

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through forty-five (45) as though fully set forth herein, and further alleges as follows:

60.     That at all times material hereto, the Defendant, RCCL, owed a duty to exercise reasonable care for the safety of its passengers, including the duty to warn its passengers of dangers both on the ship and ashore, about which it has actual or constructive knowledge, when it is foreseeable that the passengers will be exposed to said dangers.

61. This is a negligence action against RCCL for failure to warn of the dangers and violations of industry standards of the zip line ride and to failure to correct the dangers and violations of industry standards of the subject zip line ride.

62.     RCCL undertook to render certain services to its passengers including verifying that RENDEZVOUS' operations and equipment met the highest industry standards on an ongoing basis. RCCL in fact represented to its passengers that its excursions are "planned by insured partners who adhere to the highest safety standards in the industry." By undertaking to perform that service, RCCL acquired a duty to use reasonable care in performing the service.

63.     RCCL breached its duty by failing to properly inspect and monitor the zip line to verify that it did in fact "adhere to the highest safety standards in the industry", which in the zip line industry are the specific and accepted standards of the industry trade group, the Association

for Challenge Course Technology ("ACCT"). Those standards have been in existence for at least the last 10 years, well before the subject incident on this zip line. RCCL also represented to its passengers that its excursions were safe and operated by **knowledgeable, experienced**, and **insured partners**.

64.     Passengers, including Plaintiff, relied on RCCL to perform the service it undertook to perform on their behalf, and thus went on the Zip-line ride when in fact it did not comply with the highest industry standards and was unreasonably dangerous, as a result of which Plaintiff was injured. RCCL's undertaking to perform the service of making sure that RENDEZVOUS was in compliance with the industry standards increased the risk of harm to Plaintiff because it caused the Plaintiff to decide to take the ride and caused the Plaintiff to refrain from taking any measures on her own to determine whether the ride was in fact safe and in compliance with industry standards.

65.     RCCL's "insured partner", RENDEZVOUS, provided the subject zip line which violated the highest safety standards in the industry and which were not safe for its passengers. These violations and the unsafe conditions are the fact that the Plaintiff was negligently instructed not to use her brakes, the padding on the landing station was not sufficient, and no attendant was present on the station as she crashed into the station. These violations of the ACCT Standards include but are not limited to the following:

n.      **H.1. Brake System**: All zip lines shall be designed and installed with an integrated brake system.

o.      **H.1.1.1 The Brake System shall:**
- Limit the deceleration of the participant so as to prevent a hazard
- Perform its function without permanent deformation or failure of any associated components or equipment
- Arrest the motion of the participant regardless of participant orientation
- Not inhibit the participant retrieval procedure in the event that arrest occurs before the *zip line landing* area is reached.

p.      **H.1.3 Emergency Brake Requirements**: An emergency brake shall require no action by the participant and shall either be completely separate from the primary brake or an integrated backup feature of the primary brake. An emergency brake shall be required if, upon failure of the primary brake, both of the following may occur:
● The participant arrives at the zip line landing area at a speed in excess of 6 mph (10 kph)
● The participant experiences unintended and/or harmful contact with terrain, objects or people in the zip line landing area.

q.      **H.2 Zip Line Landing Areas shall:**
● Provide sufficient space for brake system operation and dismount procedures
● Provide protection from or limit unintended contact with zip lines, people and other components
● Be free from hazards that require participant action to avoid. Objects in the zip line landing area that have the potential to harm participants shall be covered with shock absorbing material.

r.      **C.1. Core Competencies** are fundamental to operations and possessed by each staff member.

s.      **C.1.3.** The organization's staff shall remain current in challenge course and canopy/zip line tour industry practices and standards.

t.      **C.1.4.** The organization's staff shall have a knowledge level of venue and specific activities appropriate to their job duties.

u.      **C.2.1.11.** The organization's staff shall have knowledge of the Association for Challenge Course Technology standards and their use.

v.      **C.2.1.12.** The organization's staff shall communicate to participants necessary safety information prior to the use of any activity or element.

w.      **C.2.3.10.** The organization's staff shall instruct and reasonably manage relevant canopy/zip line procedures and techniques which may include and are not limited to:
● Take-off
● Body positioning
● Body orientation and control
● Speed control
● Signals and commands
● Braking
● Landing and dismount
● Retrieval protocol

- Hand placement
- Contingency response procedures

x.      **C.2.3.12.** The organization's staff shall understand, instruct and reasonably manage canopy tour/zip line participant take off, travel, and dismount.

y.      **C.3.4.1.** The organization's staff shall communicate relevant program information to participants, including: the nature of the program as voluntary, an explanation of the course activities and/or elements; inherent risks; behavioral norms or expectations; and specific program objectives.

z.      B.1. Training Delivery Requisites
- **B.1.1. Scope**: Training shall include the specific skills required to operate a course including and not limited to: operations management, core, technical and facilitation competencies.

66.     RCCL knew or should have known of these violations, of the fact that the zip line did not "adhere to the highest safety standards in the industry", and of the fact that this zip line was not safe. RCCL should have known of this because RCCL had the right to inspect and to correct any of its "insured partners". The RCCL Tour Operations Manual states that "shipboard staff will participate on tours to evaluate the tour program based on the operational details and tour description provided by the tour operator. Discrepancies and irregularities will be reported to the Miami office and the local tour operator for review, follow up and correction, as appropriate." (**Exhibit B**, Tour Operations Manual, During Season, Ratings/Guest Feedback, pg. 13). RCCL also knew or should have known about RENDEZVOUS' violations based on its longstanding and ongoing relationship with RENDEZVOUS since the mid-2000s.

67.     RCCL failed to warn its cruise passengers including the Plaintiff herein of these violations and of the fact that this zip line was unsafe. As a result of this failure to warn, the plaintiff decided to take this excursion. And as a result of the violations of which RCCL failed to warn, the incident occurred where the Plaintiff on the zip line was instructed not to brake, was not slowed

or stopped on the platform because no attendant was present, and crashed into the poorly padded landing platform, thereby suffering the injuries described herein.

68.     RCCL failed to correct these violations and problems with this excursion. As a result of these failures, the Plaintiff crashed into the zip line landing station without sufficient braking, was not slowed or stopped on the platform by an attendant, and crashed into the poorly padded landing platform, thereby suffering injuries.

69.     As a result of RCCL's negligence and the underlying acts and omissions of RCCL's agent and joint venture partner, RENDEZVOUS, the Plaintiff, has suffered permanent economic damages in the past and in the future on a permanent basis including but not limited to medical expenses for medical care and treatment, household expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages including bodily injury, pain, suffering, mental anguish, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement, loss of income in the past, loss of the capacity to earn income in the future, and medical and household and other expenses. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

70.     That as a direct and proximate result of the negligence of the defendant, RCCL, as heretofore described, the Plaintiff, SUSAN MILLER, suffered serious bodily injuries, resulting pain and suffering, aggravation of a pre-existing condition, physical and mental, scarring and disfigurement, is obligated to pay and continue to pay medical bills for treatment of said injuries, lost income and his earning capacity was impaired, lost the capacity for the enjoyment of life.  The losses are permanent and continuing in nature and Plaintiff will continue to suffer same in the future.

WHEREFORE, the Plaintiff demands Judgment against RCCL, for all non-economic damages suffered in the past and in the future as a result of the bodily and personal injuries suffered by the Plaintiff including but not limited to bodily injury, pain, suffering, mental anguish, loss of capacity for the enjoyment of life, physical impairment and disability, inconvenience, scarring and disfigurement; and economic damages suffered in the past and in the future on a permanent basis by the Plaintiff including but not limited to past and future medical expenses, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT IV
## NEGLIGENT HIRING AND RETENTION

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through forty-five (45) as though fully set forth herein, and further alleges as follows:

71.     This is an action for negligent hiring and retention. RCCL owes a duty of reasonable care under the circumstances to select and retain a safe and competent excursion operator. RCCL contracted, partnered, directed through its agency relationship, and/or employed RENDEZVOUS, to operate a Zip-line tour for its passengers. Zip-lining exposes passengers to a significant risk of physical harm if not done carefully and skillfully since it is performed at heights, through trees, and at a significant rate of speed.

72.     Despite its representations that its excursion operators adhere to the highest industry standards, RCCL failed to properly or reasonably select RENDEZVOUS as its excursion operator whether as an agent or independent contractor. RCCL failed to select excursion operators such as RENDEZVOUS which were properly or reasonably licensed and safe, failed to inspect, monitor,

and take whatever steps were reasonable under the circumstances in order to verify that the excursion operator selected by RCCL "adhered to the highest safety standards in the industry."

73. **RENDEZVOUS WAS UNFIT TO OPERATE THE ZIP-LINE TOUR.** RENDEZVOUS' unfitness and incompetence is demonstrated by the unsafe practices and procedures put in place by RENDEZVOUS at its zip-line course, including the many industry violations described herein. These include but are not limited to failing to maintain competent, trained, and mature employees to assist its passengers on the Zip-line ride, instructing the Plaintiff not to use the braking system, and failing to provide an attendant to receive the Plaintiff on the landing platform. Additionally, the RENDEZVOUS Zip-line ride was not certified by the Trade Association which certifies Zip-line rides throughout the world.

74. **RCCL's KNOWLEDGE**: RCCL knew or should have known that RENDEZVOUS was not fit to provide the zip-lining excursion. First, RCCL and RENDEZVOUS had a long established relationship at the time of the time of the Plaintiff's incident. Second, RCCL through its agreements with RENDEZVOUS had the ability to inspect and correct RENDEZVOUS' operation. The sample contract documents provide that RCCL can inspect and correct the Zip-line (**Exhibit B**, Tour Operations Manual, pg. 13) Further, RCCL represents to the public that its excursion operators "adhered to the highest safety standards in the industry." This industry, Zip-lining, has specific, recognized standards, the Standards for Zip-line Tours of the ACCT. Certainly with length of relationship with RENDEZVOUS, with this type of physical activity, with this type of specific representation, and with the absolute right of RCCL to inspect (and correct) the Zip-line ride RCCL knew or should have known of the deficiencies of RENDEZVOUS' Zip-line ride.

75.     RCCL breached its duty of care by selecting RENDEZVOUS who it knew or reasonably should have known under the circumstances was unfit to operate a Zip-line tour. RENDEZVOUS' unfitness was the proximate cause of the injuries to the Plaintiff. The acts or omissions of RENDEZVOUS which illustrate its incompetence and caused the harm to the Plaintiff, include:

(a)     Failing to operate a Zip-line ride which complied with ACCT standards;

(b)     Failing to produce a shore excursion which "adhered to the highest safety standards in the industry" for RCCL's passengers;

(c)     Failing to provide a reasonable and safely designed landing station;

(d)     Failing to provide an adequate braking system;

(e)     Instructed Plaintiff not to use the braking system;

(f)     Failing to train its employees in accordance with industry safety regulations;

(g)     Failing to instruct Zip-line participants on the proper Zip-line technique and safety procedures

76.     **RENDEZVOUS' INCOMPETENCE AND UNFITNESS CAUSED THE INJURIES TO THE PLAINTIFF:** As a result of these failures, the Plaintiff was instructed not to slow her momentum or break on the RENDEZVOUS Zip-line course. The Plaintiff crashed into the assigned landing platform, which featured inadequate padding, and was not staffed by a RENDEZVOUS staff member. Accordingly, the Plaintiff struck the tree at the platform at a high rate of speed and suffered a comminuted fracture of her left femur.  These injuries are severe and debilitating.

77.     As a result of RCCL's negligence, the Plaintiff has suffered permanent economic damages in the past and in the future on a permanent basis including but not limited to medical

expenses for medical care and treatment, household expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages including bodily injury, pain, suffering, mental anguish, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement, loss of income in the past, loss of the capacity to earn income in the future, and medical and household and other expenses. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, demands Judgment against RCCL, for all non-economic damages suffered in the past and in the future as a result of the bodily and personal injuries suffered by the Plaintiff, including but not limited to bodily injury, pain, suffering, mental anguish, loss of capacity for the enjoyment of life, physical impairment and disability, inconvenience, scarring and disfigurement; and economic damages suffered in the past and in the future on a permanent basis by the Plaintiff, including but not limited to past and future medical expenses, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT V
## BREACH OF NON-DELEGABLE DUTY

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through forty-five (45) as though fully set forth herein, and further alleges as follows:

78.     Plaintiff contracted with RCCL for the Zip-line excursion.  The activity of zip-lining is an inherently dangerous activity.

79.     Because zip-lining is an inherently dangerous activity, RCCL owed Plaintiff a non-delegable duty under that contract as well as pursuant to tort principles to provide Plaintiff with a reasonably safe excursion.  It may delegate the performance of the activity to RENDEZVOUS, but it may not delegate the responsibility.

80.     RCCL breached its contracted and/or tort duty by:

a)   Failing to warn Plaintiff of the dangers of the excursion before selling it to her;

b)  Selling Plaintiff the excursion when it knew or should have known of RENDEZVOUS' dangerous practice of improperly instructing smaller passengers not to use their brakes and to curl up into a ball, thereby enhancing their speed;

c)  Failing to conduct reasonable inspections of the Zip-line procedures;

d)  Failing to ensure that the tour guides adhered to the highest safety standards in the industry;

e) Failing to provide a reasonably safe excursion under the circumstances.

81.     RCCL knew about the above dangers or they existed long enough so RCCL should have discovered them in exercising due care.

82.     Alternatively, RCCL created the dangers.

83.     On or about November 5, 2015, RCCL's breach of its non-delegable duty directly and proximately caused Plaintiff to be physically injured and suffer bodily injury and pain, disability, disfigurement, loss of capacity for the enjoyment of life, mental anguish, past and future medical expenses, aggravation of a pre-existing condition, past and future loss of the ability to earn money, and the losses are permanent. Plaintiff also lost the pleasure of the complete vacation.

Wherefore, Plaintiff asks for:

a)      Judgment for damages against RCCL in an amount proven at trial;

b)      Cost of suit and;

c)      Prejudgment interest where applicable.

## DEMAND FOR JURY TRIAL

The Plaintiff pursuant to Fed. R. Civ. P. 38(b), hereby demands a trial by jury of any issue triable of right by a jury.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants for all compensatory damages allowable by law, together with costs, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court, and demands trial by jury.


DATED:   November 4, 2016

WAKS & BARNETT, P.A.
*Counsel for Plaintiff*
9900 SW 107th Ave., #101
Miami, FL  33176
Telephone No. 305-271-8282
Facsimile No.  305-595-9776
E-mail: waksbar@aol.com

By: */s/  Joel M. Barnett*
     JOEL M. BARNETT
     Florida Bar No. 248428

PHILIP D. PARRISH, P.A.
*Co-counsel for Plaintiff*
7301 SW 57th Court, Suite 430
Miami, Florida  33143
Telephone No.  305-670-5550
Facsimile No.  305-670-5552
Email:  phil@parrishappeals.com

By: */s/  Philip D. Parrish*
     Philip D. Parrish
     Florida Bar No. 541877